Vincent W. SCHMID, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant and Third Party Plaintiff-Appellant,

Loren "Mike" Krause Construction Company, Inc., Third Party Defendant-Appellant.

Nos. 12718, 12734.

United States Court of Appeals Seventh Circuit.

Dec. 21, 1959.

C. M. Raemer, U. S. Atty., East St. Louis, Ill., Robert Wang, Atty., Civil Division, U. S. Dept. of Justice, Washington, D. C., Frank M. Rain, East St. Louis, Ill., James B. Moses, Asst. U. S. Atty., East St. Louis, Ill., George Cochran Doub, Asst. Atty. Gen., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., for appellant.

Philip G. Listeman, James H. Bandy, C. E. Heiligenstein, East St. Louis, Ill., for plaintiff-appellee.

Before SCHNACKENBERG and CASTLE, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge.

This is an action against the United States arising under the Tort Claims Act, Sections 1346(b) and 2674, Title 28 U.S.C., and Sections 60 to 69, inclusive, of Chapter 48, Illinois Revised Statutes, to recover damages for injuries sustained by Vincent W. Schmid, plaintiff-appellee herein, in a fall from scaffolding at Scott Air Force Base, Illinois.

■ At the time of the accident, Schmid was a carpenter employed by the Loren "Mike" Krause Construction Company, Inc., third-party defendant-appellant herein, which had a contract with the United States to repair and repaint the exterior of Building No. S–920 owned by the United States at the Air Base.

The scaffolding upon which Schmid was working at the time of his fall was 10 feet high and 40 to 50 feet long. It was constructed of patented steel scaffolding in sections 5 feet high and 7 feet long with boards placed thereon as floors. As Schmid was going from one section to a second, the board on which he was walking went down with him, slipping off the end of the scaffolding. Schmid was thrown to the ground, and two or three boards fell with him.

In a properly constructed scaffold, the boards of the flooring are provided with cleats to prevent the known tendency of shifting and creeping. The boards which fell in the accident did not have any cleats although others used on this scaffolding were thus equipped. It was also found that the scaffold had only one brace on each side instead of the customary two.

The scaffolding in question had been erected at this site on the morning of the day prior to the injury which occurred in the late afternoon of September 20, 1955. While the government retained general supervision of the construction project, it reserved no degree of control over the details of the performance of the Construction Company under the contract. A government inspector made periodic visits and had

been at the site of the accident about 8:00 o'clock in the morning of the day of the injury.

Paragraph 34 of the contract between the Construction Company and the government required the contractor to comply with certain government safety requirements as set forth in safety literature therein designated. It further provided that noncompliance with these requirements was to be called to the attention of the contractor by the contracting officer on behalf of the United States.

The safety literature incorporated by reference in said paragraph 34 of the contract includes "Safety Requirements in Excavation—Building—Construction," approved by the Chief of Engineers, and "Accident Prevention Handbook for Air Force Personnel," a copy of which was on file in the office of the contracting officer.

Safety prevention measures therein set forth include the following:

"Accident Prevention Handbook for Air Force Personnel"

"2.2–1 p. 6—Par. (c) The ground safety director should be sufficiently aggressive to institute corrective action and follow it through to completion. * * * The Safety Director should * * * fulfill his prevention responsibilities with minimum function and maximum effectiveness.

"2.2–2(b) The safety inspector is responsible to the safety director for the detection of unsafe conditions. This can best be accomplished by periodic and systematic inspections of all activities and operations."

"Dept. of Army, Corps of Engineers

"Safety Requirements" Dec., 1951.

"Section 20–9 — "The standards as cited herein are the minimum standards which will be used in the design and construction of runways

* * * and scaffolds but will not be interpreted to relieve compliance with applicable state * * * or local laws * * * or regulations which establish higher standards."

The so-called Scaffold Act, Chapter 48, Sections 60–69, Illinois Revised Statutes 1955, is entitled as follows:

"An Act providing for the protection and safety of persons in and about the construction, repairing, alteration, or removal of buildings, bridges, viaducts, and other structures, and to provide for the enforcement thereof."

Section 60 provides as follows:

"That all scaffolds * * * erected or constructed by any person, firm or corporation in this state for the use in the erection, repairing, alteration, removal or painting of any house, building, * * * *shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon,* * * *."* (Emphasis added.)

Section 69 entitled "Penalties—Recovery of damages—Attorney's fees" provides in part:

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing * * * of any building, bridge, * * * or other structure within the provisions of this act, shall comply with all the terms thereof, and any such owner, contractor, sub-contractor, foreman or other person violating any of the provisions * * * shall * * * be fined not less than * * *.

"For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provi-

sions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; * * *."

■ The Federal Tort Claims Act, Section 1346(b), Title 28 U.S.C., provides a remedy for personal injuries caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his employment. Under Section 2674 the United States shall be liable under the Act "in the same manner and to the same extent as a private individual under like circumstances."

Section 2671 defines the term "employee" as used in the Act and excludes therefrom "any contractor with the United States."

During the trial it was stipulated, pursuant to an indemnity provision of the contract, that in the event the government was found liable to the plaintiff, the insurer of the Construction Company would be liable over to the government to the extent of any judgment rendered for Schmid up to $50,-000.00.

The trial court, D.C., 154 F.Supp. 81, 90, at first denied recovery on the ground that the government was not an owner " * * * in charge of the project." The presentation of plaintiff's motion for a new trial was delayed pending the decision in the case of Kennerly v. Shell Oil Company, 13 Ill.2d 431, 150 N.E.2d 134. After the Kennerly case was decided, the trial court held liability on the basis of the construction of the Illinois Scaffold Act by the Illinois Supreme Court and awarded damages in the amount of $23,925.00. The government and the Construction Company have appealed from this judgment.

■ The Kennerly case involved an action by an employee of an independent contractor against the owner of the property under construction. The court construed the Illinois Scaffold Act as creating disjunctive liability in the persons therein designated. The Act was held to change the common law where

there would have been no liability under the doctrine of respondeat superior in the case of an independent contractor. The policy of creating and placing an independent, nondelegable duty of compliance on the owner was justified by the highly dangerous activity engaged in. The court further construed the meaning of "wilful violation" as being synonymous with "knowing" violation. The owner thus is liable when the dangerous condition is known to him, and also when in the exercise of reasonable care the existence of the dangerous condition could have been discovered and become known to him. The court states at page 139 of 150 N.E.2d:

"* * * Defendant knew that scaffolds were being used, and it can not escape the mandatory duty that the statute imposes by closing its eyes to their condition."

In Stewart v. United States, 7 Cir., 1951, 186 F.2d 627, 631, certiorari denied 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367, an action for injuries resulting from an explosion of hand grenades improperly stored at Fort Sheridan, this court held that Illinois law controlled the storing of explosives on government property. The applicable statute defined a standard of care in the manner of storing and handling, designated by the court as a "high degree of care and use of the utmost precaution" commensurate with the apparent danger. The court held that noncompliance with the requirements of the statute constituted evidence of negligence actionable under the Federal Tort Claims Act.

■ The United States has been held liable under the Federal Tort Claims Act for the negligent omission in maintaining its premises in an unreasonably dangerous condition. An omission to act when chargeable to the United States is an omission of its agent or agents since the United States can only act through the "agency of some human being." United States v. Trubow, 9 Cir., 1954, 214 F.2d 192, 196.

See also United States v. Praylou, 4 Cir., 1953, 208 F.2d 291, certiorari de-

nied 347 U.S. 934, 74 S.Ct. 628, 98 L. Ed. 1085, an action under the Federal Tort Claims Act for damages caused by the falling of airplanes operated by government employees on government business. Liability was asserted on the basis of the Uniform Aeronautics Act, adopted by South Carolina, Code 1952, § 2–1 et seq. The court held that this liability was not one arising out of the mere possession of property but one created by State law for the protection against invasion of personal and property rights. Such invasion can be made a wrongful act on the part of the one guilty thereof. The Federal Tort Claims Act was interpreted as intending to cover liability of this sort even though the law of a State imposed absolute liability for such damage and not mere liability for negligence.

The Wisconsin Safe Place Statute and rules of the Wisconsin Industrial Commission were held applicable to a United States Post Office building owned and operated by the United States in American Exchange Bank of Madison, Wis. v. United States, 7 Cir., 1958, 257 F.2d 938. The Wisconsin Safe Place Statute, Section 101.06 Wis. Stats., contains language similar to that of the Scaffold Act. Compare with the Illinois Act the following: "Every employer shall furnish employment which shall be safe for the employees therein * * *" and "* * * shall so construct, repair or maintain such place of employment or public building * * * as to render the same safe." The duty imposed by the Wisconsin statute is greater than that required by the common law. Nevertheless, an employer was not thereby deemed an insurer of the safety of an employee or frequenter. The statute was interpreted as setting up a standard of care. A violation of that standard by those to whom the law applied was held to constitute negligence.

■ The test of liability under the Federal Tort Claims Act as stated in Indian Towing Co. v. United States, 1955, 350 U.S. 61, 76 S.Ct. 122, 100 L. Ed. 48, and Rayonier, Inc. v. United

States, 1957, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354, is whether there is liability imposed on a private person under State law. Although enunciated in the context of the question of liability for the exercise of a discretionary function, this test is also applicable where the United States as an owner has failed to comply with the standard of care laid down for it by the Illinois Scaffold Act.

■■ The duty of compliance of an owner of property being repaired or constructed by an independent contractor, designated as "independent" and "nondelegable" by the Illinois Supreme Court does not create absolute liability or render the owner an insurer. The statute creates a standard of care for the persons therein designated; namely, the obligation that all scaffolds shall be erected in a "safe, suitable and proper manner." Any owner who knows or, in the exercise of reasonable care, could have known that the scaffold was not erected in such a manner becomes liable for noncompliance with the duty placed upon him by the terms of the Scaffold Act. The owner's liability is predicated on his failure of compliance, not on any negligence of an independent contractor.

Cases cited by appellants dealing with the substantive limitations to liability under the Federal Tort Claims Act of Section 2680 of Title 28 U.S.C. or with nonliability for the negligence of an independent contractor as provided for in Section 2674 are not applicable.

The record supports a finding that the United States knew or, in the exercise of reasonable care, could have known that the scaffold on which Schmid was working was in a dangerous condition in that some of the floor boards lacked cleats, and it had less than the customary braces. The scaffold had been erected about one and a half days prior to the accident. A government agent was present at the site the morning of the day of the injury. The government, as owner, had the duty under

the Illinois Scaffold Act, to see that the scaffold complied with the Act. Its agents failed to perform that duty. A private person would be liable under these circumstances. It is immaterial that the independent contractor might also be liable. The government's liability does not rest on the act or omission of the independent contractor but is based on its own failure to comply with the requirements of the Scaffold Act as owner of the premises.

The trial judge made no express finding as to contributory negligence. He did note that the legislature by enactment of the Scaffold Act intended that the common law defenses of assumption of risk and of contributory negligence should not be available. The courts have followed this intent in the construction of this Act.

In Schultz v. Henry Ericsson Co., 1913, 182 Ill.App. 487, affirmed 264 Ill. 156, 106 N.E. 236, it was argued that the jury verdict was not supported by the evidence because of contributory negligence and assumption of risk by defendant in error. In answer to this contention the court states at page 493 of 182 Ill.App.:

> "The doctrines of assumed risk and of contributory negligence have no application to the statute in question, and furnish no defense thereunder."

The trial judge did not make formal findings of fact and conclusions of law. His decision clearly indicated his holding. A successful party in the District Court may sustain his judgment on any ground that finds support in the record. Jaffke v. Dunham, 352 U.S. 280, 77 S. Ct. 307, 1 L.Ed.2d 314.

The safety provisions contained in paragraph 34 of the contract between the government and the Construction Company, incorporated by reference, recognize the necessity of compliance with duties imposed by applicable State law.

The judgment appealed from is affirmed.