(No. 38637.—

STANLEY LARSON, Appellant, *vs.* COMMONWEALTH EDISON COMPANY *et al.,* Appellees.

*Opinion filed Sept. 29, 1965.—Rehearing denied Nov. 18, 1965.*

PETERSON, LOWRY, RALL, BARBER & ROSS, of Chicago, (HAROLD W. HUFF, JAMES L. TUOHY, and WILLIAM E. RATTNER, of counsel,) for appellant.

HARRY I. PARSONS, of Chicago, (NORTON WASSERMAN and CHARLES D. SNEWIND, of counsel,) for appellee Commonwealth Edison Company.

VOGEL & VOGEL, of Chicago, (L. H. VOGEL and ALBERT F. MANION, of counsel,) for appellee A. Kolflat.

BERNARD M. MAMET, PETER FITZPATRICK, LEONARD M. RING, and JOHN G. PHILLIPS, all of Chicago, for *amicus curiae,* Local No. 1, International Assn. of Bridge, Structural and Ornamental Ironworkers.

\* Mr. JUSTICE DAILY delivered the opinion of the court:

Based upon a claimed violation of the Structural Work Act, more commonly known as the Scaffold Act, (Ill. Rev. Stat. 1957, chap. 48, pars. 60-69,) the plaintiff, Stanley Larson, brought this action in the circuit court of Cook County against Commonwealth Edison Company and A. Kolflat, the latter doing business as Sargent & Lundy, to

---

\* This opinion was prepared by the late Mr. JUSTICE DAILY and was adopted and filed as the opinion of the court.

recover for personal injuries sustained when a scaffold on which plaintiff was working broke and fell. The trial court directed a verdict and judgment for defendant Sargent & Lundy, and a jury returned a verdict for defendant Edison upon which judgment was entered. On appeal by plaintiff both judgments were affirmed by the Appellate Court. (48 Ill. App. 2d 349.) We have granted plaintiff's petition for leave to appeal and, in addition, have permitted the filing of briefs by *amici curiae.*

Factual background shows that in November, 1955, Edison commenced the remodeling and rehabilitation of an electric generating plant it owned and operated in the city of Chicago. The plant consisted of several buildings, occupying an area of three city blocks, and the project entailed the removal of old equipment, cleaning out the interior of the buildings to the walls, and the installation of new equipment. To provide for continued plant operation, the work was accomplished in a progressive fashion and was done in "units." For example, prior to the removal of old turbines from Unit 8, new turbines were installed in Unit 7 and, before the work progressed to Unit 8, a temporary barricade or partition was erected between the two units so that demolition in Unit 8 could proceed without damaging what had been accomplished in Unit 7.

Edison entered into from 70 to 80 contracts with numerous contractors, each of whom was to perform specific work on the over-all project. The majority of the contracts were prepared by Sargent & Lundy, (hereinafter referred to as Sargent) a firm of consulting engineers specializing in the design of electrical generating stations, as were the work plan, structural designs, and specifications used in the construction work. These contracts specifically required the contractors to comply with the provisions of the Scaffold Act.

Plaintiff's employer, Paschen, had a contract for the work in Unit 7, one provision of which stated: "The work

shall be done under the general supervision and to the satisfaction of owner's Station Construction Department * * *." The contract also obligated Paschen to perform additional work as directed by Edison and, in accordance therewith, a "purchase order" was drawn by Edison whereby Paschen was directed to erect the barricade between Units 7 and 8. By the terms of the purchase order, Paschen was to: "Furnish all labor, materials, tools and equipment required to install preliminary structural work for Unit No. 8, Crawford Station, as directed by the Station Construction Department, and in accordance with drawings to be issued by Sargent & Lundy." To aid in the construction of the barricade, scaffolds were erected by Paschen employes and it was one of such scaffolds which broke, causing plaintiff to be thrown to the floor. As may be seen in greater detail from the opinion of the Appellate Court, (48 Ill. App. 2d 349,) it is undisputed that the scaffold did not comply with rules promulgated by the Industrial Commission to implement the statute, and that plaintiff, who had no part in the erection of the scaffold, was injured as a direct result of such noncompliance.

Apart from intermittent visits by its chief engineer, Sargent had no personnel working at that construction site. However, six employees of Edison, all members of its Station Construction Department, were on the job at all times. According to one of the group, they exercised no control over the work, but merely inspected to see that the terms and specifications of the contracts were complied with. So far as the barricades were concerned, the same witness stated that the scope of their inspection did not extend to the kind or safety of the scaffold employed, but only to a determination of whether Edison "got the type of barricade specified." Representatives of Edison's Safety Department also visited the site periodically, and while their primary concern was the safety of Edison's operating personnel still on the premises, it appears they could make, but not enforce, safety sug-

gestions to the contractors and their employees. Weekly work progress reports were compiled by Edison and, adhering to a long practice between the two firms for many years, copies of the reports were forwarded to Sargent. In addition weekly or bi-weekly meetings, presided over by Edison, were held to co-ordinate the sequence of the work, and were attended by representatives of all the contractors and by a representative of Sargent.

Although there is general accord between the other participants to the appeal that both Edison and Sargent may be sued as persons potentially having duties under the Scaffold Act, it is the contention of one *amicus curiae,* based principally on *Breton* v. *Levinson,* (1917), 207 Ill. App. 406, that we should discard all prior decisions and reconstrue the act as meaning that only the person or persons who actually erect a scaffold are subject to duty and liability under its terms. We see no beneficial purpose to be served by an extended discussion of this proposal. Suffice it to say, first, that such a construction was rejected, in principle at least, in *Gannon* v. *Chicago, Milwaukee, St. Paul and Pacific Railway Co.* 22 Ill.2d 305, after an exhaustive analysis of the statute and prior decisions; and second, that when sections 1 and 9 of the act are read together, (Ill. Rev. Stat. 1957, chap. 48, pars. 60 and 69,) the construction contended for cannot be sustained. (See also: *Kennerly* v. *Shell Oil Co.* 13 Ill.2d 431.) Moreover, the legislature has apparently agreed with our interpretation of the act, since it has not seen fit to nullify or limit such construction by amending the statute.

The principal controversy between plaintiff and defendant Edison is whether the trial court erred when, over plaintiff's objection, it instructed the jury as follows: "The Court instructs the jury that the plaintiff is not entitled to recover damages under the provisions of the Structural Work Act unless he has proven by a preponderance, or greater weight of the evidence, that the defendant, Com-

monwealth Edison Company, had charge of the work *by retaining control and supervision of such work being performed by Paschen Contractors, Inc."* (Emphasis added.) The controlling section of the statute, which is section 9, makes no mention of either the retention or exercise of control and supervision, but imposes a duty of compliance, and liability for either wilful violation or a failure to comply with the terms of the act, upon "any owner * * * *having charge of* the erection * * * [or] alteration * * * of any building * * * or other structure * * *." Ill. Rev. Stat. 1957, chap. 48, par. 69. (Emphasis added.)

It is the contention of the plaintiff, concurred in by a dissenting justice in the Appellate Court, that the instruction misstates the law and improperly limits and restricts the language of the statute, first, when it requires proof of the retention of supervision and control as the basis for Edison's liability, and second, when it also requires proof of the retention of supervision and control over the specific work being done by Paschen. Conforming to the views of the majority opinion in the Appellate Court, it is contended by Edison, first, that the words "control and supervision" employed in the instruction are the legal equivalent of the statutory language "having charge of," and second, that under the factual circumstances presented in this case it was essential to focus the attention of the jury on Paschen's work.

While it may be conceded that some of the decisions in this jurisdiction involving the Scaffold Act appear to have equated "having charge" with "supervision and control" in varying degrees, it is our opinion the language of the statute, and the legislative intent it reflects, do not permit the conclusion that the terms are the inflexible and unbending legal equivalent of the other. The term "having charge of" is a generic term of broad import, and although it may include supervision and control, it is not confined to it. As was said of the word "charge" in *People* v. *Gould,* 345 Ill.

288, 323 : "The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. 'To have charge of' does not necessarily imply more than to care for or to have the care of." Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is "in charge," they are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute. Rather, consistent with its beneficient purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure.

In the *Gannon* case, (22 Ill.2d 305,) where it was expressly noted that the owner involved had "exercised no control over the manner in which the work was being done," (p. 307,) we held that an owner must have some direct connection with the operations, over and above mere ownership or the employment of an independent contractor, and indicated that the question whether the particular connections and activities in a given case were such that an owner could be deemed to have charge was a question of fact for the jury to determine. Nothing in Gannon suggests or holds that either the exercise of supervision and control, or the retention of the right to do so, are essential ingredients for having charge. And manifestly, the plain language of the statute does not limit duty and liability to owners retaining control and supervision of the work as the instruction suggests. The inclusion of the words "by retaining supervision

and control of the work" placed a greater burden on plaintiff than the law required and was improper.

It is to be gathered from the opinion of the Appellate Court, and the arguments of Edison in this court, that justification for the instruction given in this case may be found in the need to provide jurors with a definition of the statutory words "having charge of." We do not believe such a need exists. It is well established that the meaning of words, used in their conventional sense, need not be defined or explained in giving instructions to the jury. (*Nowak v. Witt,* 14 Ill. App. 2d 482; 34 I.L.P., Trial, sec. 176.) The term "having charge of" is one of common usage and understanding, and it is our opinion that further attempt at definition can only lead to confusion and error.

We are, however, in accord with the view of the Appellate Court that, under the particular circumstances of this case, it was proper to restrict the instruction to "[work] performed by Paschen Contractors, Inc." As pointed out in *Gannon* (p. 323,) "before civil liability may be imposed upon the defendant owner under section 9 of the act, it must appear that he had charge of the construction operations involving the violation." Here, there were some 75 to 80 contracts, a large number of contractors were involved, and the alteration work was going on in several buildings. Thus, Edison could be liable only if the activities by which it could be found to have charge extended to the work of Paschen, the contractor which erected the faulty scaffold.

The conclusion we have reached, and the necessity for a new trial, requires us to determine the further question of whether plaintiff could properly prove that, after the occurrence, Edison instructed Paschen to use a different type of scaffolding. Citing numerous authorities, it is said in 64 A.L.R. 2d 1311: "Evidence of repairs made or precautions taken after an accident may be admissible, as an exception to the general rule, to show that control of the premises is

in the defendant, where this is a matter of dispute." By analogy, it is our opinion that the same exception should apply where the dispute is centered around participation in the work in which the accident occurred. Whether or not Paschen complied with the instruction by using a different type scaffold is immaterial. The proffered testimony was relevant to the issue of whether Edison could be deemed to have charge of Paschen's work.

Insofar as the defendant Sargent is concerned, plaintiff contends that the directed verdict was improper, and that the trial court also erred in quashing a subpoena which demanded the production of the contract between Edison and Sargent, and other records of the latter. The position of the plaintiff was, and is, that such records, the contract in particular, were relevant to the question of whether Sargent was in charge of the work, and that the quashing of the subpoena prevented plaintiff from presenting evidence to establish his case against Sargent. The trial court, however, employing much the same concept embodied in the Edison jury instruction, held that Sargent could have duty and liability under the act only if it was "actively engaged in supervisory work," or if it "had something to do with the supervision and management of the job," and on this basis quashed the subpoena, reasoning that the records sought could not show active supervision and control. Looking once again to the legislative purpose of providing maximum protection in a particularly hazardous occupation, it is our opinion that the act was also too narrowly construed as to this defendant.

It may be conceded that Sargent, like an owner, must have some direct connection with the construction and alteration operations before it can be deemed to be in charge of the work, and thus subject to duty and liability under the act. But assuming that its contract with Edison, or perhaps the directions issued to Paschen pursuant to the "purchase order," gave Sargent the right to control the work, we be-

lieve it necessarily follows that such right, exercised or not, is sufficient to establish duty under the act.

Even at common law retention of the right to control the work is sufficient to subject one to duty and tort responsibility, (see: *Schwartz v. Gilmore*, 45 Ill. 455, 457; *Best Manufacturing Co. v. Peoria Creamery Co.* 307 Ill. 238, 241-242; *Hartley v. Red Ball Transit Co.* 344 Ill. 534, 539; Restatement of Torts, § 414 and comment; 57 C.J.S., Master & Servant, sec. 602) and the retention of the right to control must carry with it the same duty and responsibility under the Scaffold Act. Otherwise, the absurd result would be that a statute designed to broaden the common-law duty and to give added protection, would be construed as imposing a lesser duty than the common law. Certainly it was not the legislative intent that those retaining the right to supervise or control the work could be freed from duty by doing nothing, for section 9 imposes liability for a wilful failure to comply with any of the provisions of the act, as well as wilful violation. For this reason, we hold the trial court erred in holding that the documents sought were irrelevant and in quashing the subpoena on such ground.

Since the cause must be tried again as to Sargent, it is also necessary to consider the holding of the Appellate Court that the subpoena was properly quashed as being "unreasonable in scope" and "untimely" because plaintiff failed to use the discovery procedures provided for by Rule 17 of this court, (Ill. Rev. Stat. 1963, chap. 110, par. 101.17,) with respect to documents. As to the first premise, the conclusion of the Appellate Court that the subpoena sought "documents of several vague categories" is unwarranted. The request for plans, contracts, progress reports, *etc.*, "concerning construction and alteration on Unit 7 & 8 and the barrier wall between," was sufficiently definite for compliance. (*Cf. People v. Allen*, 410 Ill. 508, 513 *et seq.*) As to the second, the rceord discloses that plaintiff did avail himself of discovery procedures prior to trial in order to inspect the "con-

tract or contracts" between Sargent and Edison, and all plans, reports, books, communications or memoranda "pertaining to Unit 7 and the buffer wall or barrier between Unit 7 and Unit 8." Under the best-evidence rule only the original of any of these documents was admissible in evidence. (18 I.L.P., Evidence, sec. 91.) And as plaintiff points out, a subpoena for production at trial is a classic, recognized method for compelling the production of documents desired to be introduced into evidence.

For the reasons stated, the judgment of the Appellate Court is reversed as to both defendants, and the cause is remanded to the circuit court of Cook County for a new trial.

*Reversed and remanded.*