**Willie B. FENTRESS, Plaintiff-Appellee,**

**v.**

**UNITED STATES of America, Appellant,**

**v.**

**TOWER MAINTENANCE OF ILLINOIS, INC., Third-Party Defendant-Appellee.**

**No. 17430.**

United States Court of Appeals, Seventh Circuit.

Aug. 10, 1970.

William J. Bauer, U. S. Atty., Chicago, Ill., Stephen R. Felson, Donald L. Horowitz, William D. Ruckelshaus, Asst. Atty. Gen., Thomas A. Foran, U. S. Atty., Alan S. Rosenthal, Atty., Department of Justice, Washington, D. C., for appellant.

James P. Chapman, Charles E. Eklund, Chicago, Ill., for appellee.

Before CLARK, Associate Justice, Retired,[1] DUFFY, Senior Circuit Judge, and KILEY, Circuit Judge.

KILEY, Circuit Judge.

The issue presented on this appeal is whether the Federal Tort Claims Act[2] precludes a recovery of money damages for injuries suffered as a proximate cause of the government's violation of the Illinois Scaffold Act.[3] We hold that the Federal Act does not preclude plaintiff Fentress' recovery, and we affirm.

On December 14, 1961, the Federal Aviation Agency awarded Tower Maintenance of Illinois, Inc. (Tower) the contract for installation of a "rigid radome"—a reinforced plastic dome-shaped structure—as part of construction of a radar facility at McCook, Illinois. Fentress, a Tower employee, was engaged in caulking the seams of the dome's plastic covering from a ladder placed on a catwalk at the base of the dome. He decided to work from a rope sling, instead of using a ladder, in order to speed up the work. Tower's foreman Baker and Agency employee Koke approved, and Fentress made the sling by tying a short rope at the base of the tower on top of the dome and tying a larger rope to the short rope and to his safety belt. Later he was using the sling in work when the rubbing of the ropes caused a collapse of the sling and Fentress fell to the catwalk and was injured. He was awarded workmen's compensation against Tower under Illinois law[4] and thereafter brought this suit under the Tort Claims Act. The government filed a third-party complaint against Tower claiming indemnity should it be held liable to Fentress.

The district court found, as substantially alleged by the Fentress complaint, that Fentress was working about 95 feet above the ground at the time of the injury and that no "safe and proper scaffold, stay, [or] support" was provided for his protection as required by Section 64 of the Scaffold Act;[5] that the "rope

1. The Honorable Tom C. Clark, Associate Justice, United States Supreme Court, Retired, is sitting by special designation.

2. 28 U.S.C. §§ 1346(b), 2671–2680.
   Section 1346(b) provides in relevant part:
   > Subject to the provisions of Chapter 171 of this title, the district court * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
   
   Section 2674 also provides:
   > The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances.
   > * * *

3. Illinois Structural Work Act (Scaffold Act), Ill.Rev.Stat. ch. 48, §§ 60–69 (1967).

4. The award precluded his suit against Tower. See Ill.Rev.Stat. ch. 48, § 138.5 (1967).

5. Section 64, ch. 48, Ill.Rev.Stat.1967 provides in relevant part:
   > That any person * * * hiring, employing or directing another to perform labor of any kind, in the erecting, repairing, altering or painting of any * * * tower, steeple, pole, staff, dome or cupola, when the use of any scaffold, staging, swing, hammock, support, temporary platform or other similar contrivance are required or used, in the performance of such labor, shall keep and maintain at all times * * * a safe and proper scaffold, stay, support or other suitable device, not less than sixteen (16) feet or more below such work-

and safety belt" being used was not constructed and operated so as to properly protect Fentress and no safe and suitable scaffolding or net was provided for his proper protection as required by Section 60 of the Act;[6] that the government had the right to stop the work if being done in violation of the Scaffold Act or in an unsafe manner and had the right to order Tower to take necessary safety precautions; and that government engineer Koke had knowledge of the unsafe device used by Fentress and of the failure to comply with the Scaffold Act provisions since no net was being furnished to protect Fentress in the event of his falling, as he did, 40 to 45 feet to the catwalk.

Substantially upon these findings, the court concluded that the government had "charge" of the work so as to be liable for wilful violation of the Scaffold Act;[7] that the government violated the Act by its failure to furnish safe and suitable scaffolding or netting for protection of Fentress; that engineer Koke's actual knowledge, or knowledge he could reasonably have discovered, rendered his violations of the Act wilful; and that the wilful violations proximately caused Fentress' injuries.

I. The government first contends that the Scaffold Act is an absolute liability statute beyond the purview of the Tort Claims Act, and that the district court accordingly erred in holding it liable.

■ We agree with the government that the Tort Claims Act would preclude recovery if the Scaffold Act imposes absolute liability. Dalehite v. United States, 346 U.S. 15, 44, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); United States v. Page, 350 F.2d 28, 33 (10th Cir. 1965). The Tort Claims Act is to be invoked only on a "negligent or wrongful act or omission" of a government employee. Dalehite, supra, 346 U.S. at 44, 73 S.Ct. at 972. See also Konsler v. United States, 288 F.Supp. 895 (N.D.Ill.1968). We must determine, therefore, whether the Illinois Scaffold Act imposes absolute liability upon persons who violate its provisions.

The Illinois Scaffold Act was adopted in 1907. In Section 60 the duty of providing safe equipment for hazardous work at high altitudes is imposed, *inter alios*, upon the owner. In Section 69 a civil remedy[8] is provided for victims suffering injury, or for dependents in

---

ing scaffold, staging, swing, hammock, support or temporary platform, when such work is being performed, at a height of thirty-two (32) feet, for the purpose of preventing the person or persons performing such labor, from falling in case of any accident to such working scaffold, staging, swing, hammock, support or temporary platform.

6. Section 60, ch. 48, Ill.Rev.Stat.1967 provides in pertinent part:

That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of

any person or persons employed or engaged thereon. * * *

7. Section 69, Ill.Rev.Stat.1967 provides, *inter alia:*

For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; and in case of loss of life by reason of such wilful violation or wilful failure as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives.

8. A criminal penalty is also imposed under Section 69.

case of death, from wilful violation of the Act.

The government relies on Kennerly v. Shell Oil Company, 13 Ill.2d 431, 150 N. E.2d 134 (1958), and Gannon v. Chicago, Milwaukee, St. Paul & Pac. Ry. Co., 22 Ill.2d 305, 175 N.E.2d 785 (1961), in support of its contention that Illinois decisional law has established that the Scaffold Act imposes absolute liability. We think that the reliance is misplaced. The issue presented in Kennerly was whether the Act imposed liability only upon the person "in charge" of the work or whether its scope included both the contractor and the owner of the premises, irrespective of which party was "in charge." The Illinois Supreme Court, with one judge dissenting, held that liability extended to the owner of the premises, even if he was not in charge.

On the same day that the Kennerly case was filed, the Illinois Supreme Court filed its opinion in Gannon v. Chicago, Milwaukee, St. Paul & Pac. Ry. Co., 13 Ill.2d 460, 150 N.E.2d 141 (1958) (Gannon I). There the circuit court had dismissed Gannon's suit against his employer Marhoefer. Gannon appealed and the Supreme Court affirmed because Section 5(a) of the Illinois Workmen's Compensation Act, superseding the Scaffold Act to the extent of prohibiting an employee's suit against his employer, barred Gannon's suit against Marhoefer. Gannon thereafter proceeded successfully against the Railroad, owner of the property where he was injured, and recovered a judgment for $45,000. The Illinois Appellate Court reversed. 25 Ill.App.2d 272, 167 N.E.2d 5. The Illinois Supreme Court, 22 Ill.2d 305, 175 N.E.2d 785 (1961) (Gannon II), allowed leave to appeal to determine "the nature of the liability" under the Scaffold Act, both parties and the appellate court having cited Kennerly for diametrically opposed positions.

The court reexamined the cases dealing with this question and found a uniform interpretation that Kennerly imposed "absolute liability" irrespective of whether control had been given to an independent contractor.[9] The court, however, in "reconsidering the construction of this act," rejected the Kennerly approach. The court "could not perceive" that the legislature in 1907 intended that each person named in the Act would be liable, irrespective of his connection with the work, "when, at that time, no such liability was even imposed on the immediate employer" and when "liability without fault was frowned upon." 22 Ill.2d at 319, 175 N.E.2d at 792.

Among other reasons given for the court's rejection of absolute liability, the court considered the essential statutory "wilful" violation, construed to mean "knowing," and said that wilful violations mean those by persons directly connected with the work. The court held an employee has an action against any enumerated person "having charge" of the work if his injury is caused by that person's wilful violation of the Act. Thus, Gannon II rejected the view that the Scaffold Act imposed an absolute, non-delegable duty on the persons named in the Act.

This court has reached a similar conclusion in Schmid v. United States, 273 F.2d 172 (7th Cir. 1959). There we affirmed a judgment for plaintiff Schmid in a suit for personal injuries brought under the Scaffold Act against the government as owner of the premises where plaintiff was injured. The court rejected the government's argument—raised again here—that it was not subject to the Act since the Act allegedly imposed absolute liability on a landowner. The court pointed out that a landowner is liable under the Illinois statute only if a "wilful violation" is proved. The Schmid court relied heavily on its earlier decision in American Exchange Bank of

9. The court incorrectly cited Schmid v. United States, 273 F.2d 172 (7th Cir. 1959), in support of this proposition. As we point out hereinafter, the Schmid decision held that the Scaffold Act "does not create absolute liability." Id. at 176.

Madison v. United States, 257 F.2d 938 (7th Cir. 1958), for the proposition that the government may be liable under the Tort Claims Act for breach of a duty established by a state statute. There the plaintiff sued the government under the Wisconsin Safe Place Statute, W.S. A. § 101.06, for injuries received while an invitee on the post office grounds. The court, in reversing judgment for the defendant, stated that although the "duty imposed by the Wisconsin Safe Place Statute upon the owner or employer is greater than that required by the common law," such owner or employer is not thereby deemed "an insurer of the safety of an employee or frequenter." Rather, the statute "lays down a standard of care and if those to whom it applies violate the provisions of the statute, they are guilty of negligence." *Id.* at 942.

The court in *Schmid* repeated this statement after pointing out the similarity between the two statutes and concluded that the Illinois Scaffold Act "does not create absolute liability or render the owner an insurer." 273 F.2d at 176.

No definition of the word "absolute" can be found which accommodates the sense in which the government seeks to apply it to the civil liability imposed by the Scaffold Act.

The owner of property is not *ipso facto* liable where an employee working on the owner's property is injured. There must be proof that the owner was *in charge* of the work and that the injury was proximately caused by the owner's "wilful violation of" or "wilful failure to comply with" the provisions of the Act. Unless this proof is made, the owner is not liable. We think the government's contention of absolute liability is strained in view of the benevolent purpose of the Tort Claims Act.[10]

■ We hold therefore that the Scaffold Act as construed by the Illinois Supreme Court does not impose an absolute liability. It follows that we hold that the Tort Claims Act does not preclude the Fentress claim.

II. The government next argues that the district court erred in finding the government to be "in charge" of the construction work within the meaning of the Scaffold Act. In support of its argument, the government relies on this court's decision in Cannon v. United States, 328 F.2d 763 (7th Cir. 1964), where we affirmed a judgment for the defendant, under the Scaffold Act, based on a finding that the defendant did not have charge of the work. This court's affirmance there relied on two factors —that defendant had no control over hiring and firing of the independent contractor's employees, and had no control over the method of doing the work.

*Cannon* does not compel us to set aside the district court's finding of ultimate fact that the government was "in charge" when Fentress was injured. There is evidence in the record before us that Koke, the government engineer, was aware of the use of the dangerous rope sling and approved its use in aid of speeding up the work, and that the government had the contractual right to stop the use of the sling and knowingly failed to exercise that right.

The Illinois Supreme Court has broadly construed the meaning of the phrase "having charge" in the Scaffold Act. In Larson v. Commonwealth Edison Co., 33 Ill.2d 316, 211 N.E.2d 247 (1965), the court rejected an argument that the

---

10. The government's citation of Konsler v. United States, 288 F.Supp. 895 (N.D.Ill. 1968), is inapposite. *Konsler* held that the Illinois Dramshop Act imposed absolute liability on any shop owner who sells intoxicants to an intoxicated person. But the Illinois courts have settled the point that dramshop liability is imposed without fault. *See, e. g., Konsler, supra,* at 896. And in the second *Gannon* case, the Illinois Supreme Court distinguished this greater standard of care from that under the Scaffold Act.

terms "having charge" and "supervision and control" were equivalents: "The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it." 33 Ill.2d at 321, 211 N.E.2d at 251. The court then referred to its earlier decision (*Gannon II*) and said, "In *Gannon* * * * we held that an owner must have some direct connection with the operations, over and above mere ownership * * * and indicated that the question whether the particular * * * activities * * * were such that an owner could be deemed to have charge was a *question of fact*." *Id.* (Emphasis added.) The court said the Act itself did not limit liability of owners to those retaining "control and supervision" and that further attempt to define "having charge" would only confuse.

■ In light of this recent Illinois interpretation of the broad meaning of "having charge" and in view of the ample support in the record for the trial court's ultimate finding, we hold the court's conclusion that the government was "in charge" of the work within the meaning of the Scaffold Act was not "clearly erroneous" under Rule 52(a).

III. The government finally contends that the district court erred in holding, with respect to the third-party complaint, that the government was not entitled to indemnity from Tower. It asserts that Tower has obligated itself, both under the express provisions of the contract and under an implied warranty of "workmanlike" performance, to indemnify the government for its negligence.

The government bases its contractual indemnity claim against Tower on the following clause contained in the contract: "* * * [the contractor shall] take precautions necessary to protect persons or property against injury or damage and be responsible for any such injury or damage that occurs as a result of his fault or negligence."

In a recent opinion filed on March 9, 1970, United States v. Seckinger, 397 U. S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), the Supreme Court construed an almost identical government contract clause.[11] There an employee of an independent contractor working on a government project had recovered a judgment against the government based on a common law negligence theory and the government sought indemnity from the contractor. The Supreme Court, in reversing the judgment for the independent contractor, stated that the indemnity clause lent itself to two reasonable opposite interpretations—that the contractor must bear ultimate responsibility for all

---

11. The disputed clause in *Seckinger* provided as follows:

The contractor shall, without additional expense to the Government, obtain all licenses and permits required for the prosecution of the work. He shall be responsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work. He shall also be responsible for all materials delivered and work performed until completion and final acceptance, except for any completed unit thereof which theretofore may have been finally accepted.

The similar clause in the Tower contract reads as follows:

4. RESPONSIBILITY OF CONTRACTOR.—

At his own expense the Contractor shall: (a) obtain all required licenses and permits; (b) provide competent superintendence; (c) take precautions necessary to protect persons or property against injury or damage and be responsible for any such injury or damage that occurs as a result of his fault or negligence; (d) perform the work without unnecessarily interfering with other contractors' work or Government activities; (e) be responsible for all damage to work performed and materials delivered (including Government-furnished items), until completion and final acceptance.

damage done and fully indemnify the government for its losses whether or not caused by the government's own negligence, or that the government and the contractor should bear a burden proportionate to their negligence. The Court rejected the government's argument that it was entitled to full indemnity on the ground that a contractual provision should not be construed to permit an indemnitee to recover for his own negligence in the absence of clear and unambiguous language to the contrary. The Court, however, stated that to construe the clause so as to prohibit any recovery on the part of the government (unless the contractor is the sole tortfeasor) would do violence to the words in the clause that the contractor is responsible for all damage resulting from his negligence.[12] The Supreme Court concluded that in agreeing to the clause the intention of the parties was that each was to bear responsibility for its own negligence. The Court remanded the case for determination of each party's negligence.

    ■ *Seckinger's* interpretation of the standard government indemnity clause is controlling in the case before us where there is evidence in the record that Tower supervised the construction of the radome and approved the use of the defective device which caused the injury complained of. We reverse the judgment of the district court and remand the case for proceedings to determine the liability of each party for its own "negligence or wrongful conduct," and to apportion costs accordingly.[13]

The judgment for plaintiff Fentress is therefore affirmed, and the judgment for Tower is therefore reversed and remanded.

---

12. Since the Tort Claims Act limits governmental tort liability to "negligent and wrongful acts," the contract clause would be anomalous if indemnity were denied whenever the government acted negligently or wrongfully.

13. Because we have taken the view that the rights and duties of the parties are governed by contract, we do not reach the

government's alternative theory that Tower breached an implied warranty of workmanlike service. See United States v. Seckinger, 397 U.S. 203, 217, n. 22, 90 S.Ct. 880 (1970).