Joseph McGovern, Plaintiff-Appellee, v. Joseph D. Standish, Defendant-Appellant.

(No. 74-278; )

Fifth District—November 20, 1975.

CARTER, J., dissenting.

John F. O'Connell, of O'Connell & Waller, of Belleville, for appellant.

Callis, Schooley, Filcoff and Hartman, of Granite City (William W. Schooley, of counsel), for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This appeal arises from a suit by plaintiff against the defendant under the Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, §§ 60-69). A count for negligence was dismissed and the case went to the jury under the Structural Work Act theory. A verdict was returned in favor of the plaintiff, Joseph McGovern, in the amount of $35,000. Judgment was entered on the verdict and defendant appealed.

Plaintiff Joseph McGovern was an ironworker employed by S. M. Wilson, the general contractor engaged to construct an addition to St. Elizabeth's Hospital in Granite City, Illinois. On June 4, 1969, he fell from a scaffold and was injured. He alleged that the scaffold was not safe and that defendant Joseph D. Standish, architect for the work, was in charge of the work and violated the Structural Work Act in permitting plaintiff to use a defective and unsafe scaffold.

Whether or not the scaffold was defective and unsafe is not an issue. The sole question on review is whether or not the defendant architect was 'a "* * * person having charge of the erection, construction, repairing, alteration, removal, or painting of any building * * *" within the meaning of the Structural Work Act.

Section 9 of the Structural Work Act ( Ill. Rev. Stat. 1969, ch. 48, § 69) provides that "[a]ny owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provision of this act, shall comply with all the terms thereof * * *." It further provides that "[f]or any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured * * *."

The defendant maintains that as architect on the construction job and under the facts adduced in the trial court, he was not a "person having charge of the construction" and that therefore the trial court should either have directed the verdict in favor of the defendant or have granted judgment notwithstanding the verdict.

Both plaintiff and defendant cite many sections of the contract between the S. M. Wilson Company and the Sisters of Divine Providence acting on behalf of St. Elizabeth's Hospital. Plaintiff emphasizes those statements in the contract the effect of which, he alleges, is to make the architect a person in charge. Defendant claims that these sections have no such effect and cites other sections of the contract which, it alleges, show that the defendant was not a person in charge. Plaintiff points to sections which require the contractors to submit to the architect a description of methods, sequence of erection and type of equipment proposed for use in the erection of structural steel work and to other sections which require the judgment of the architect regarding materials to be used. However, we note in one such section ( Special Conditions, Schedule of Construction, Section 6, Structural Steel Section 14, 8) the following proviso: "Approval of material submitted under this paragraph does not relieve the contractor of his responsibility for providing the proper methods, equipment, workmanship and safety precautions."

■■ Whether or not an architect is a person in charge within the meaning of the Structural Work Act is in each situation a question of fact to be determined not only from written contracts available but also from surrounding circumstances and the role in fact assumed by the architect.

Plaintiff relies on *Miller v. DeWitt*, 37 Ill.2d 273, 226 N.E.2d 630, to support its contention that the defendant architect in the instant case was in charge of the work. In *DeWitt* the work required that a steel

roof be shored up while construction took place beneath it. The roof fell and the plaintiff was injured. The court in *DeWitt* stated at page 284 that "[a]s a general rule it has been said that the general duty to 'supervise the work' merely creates a duty to see that the building when constructed meets the plans and specifications contracted for." Thus, under ordinary circumstances the architect would not be regarded as a person in charge of the work. But in *DeWitt* the court went on to say: "In the present case, however, despite the argument of the architects that the shoring here was a method or technique of construction over which they had no control, we believe that under the terms of the contracts the architects had the right to interfere and even stop the work if the contractor began to shore in an unsafe and hazardous manner * * *." (37 Ill.2d 273, 284.) Coupled with what the court felt was a unique construction problem was a statement in the contract between the architects and the school district which provided: "He [the architect] has *authority to stop the work* whenever such stoppage may be necessary to insure the proper execution of the Contract." (37 Ill.2d 273, 282.) (Emphasis added.)

We accept the general rule expressed in *DeWitt*, namely, that unless the contract itself and the peculiar circumstances imposed a duty on the architect as a "person having charge," then no such duty exists. Though in *DeWitt* these special circumstances and a contractual right to terminate the work were present, there was nevertheless a vigorous dissent by Justice House who pointed out that if architects are to be considered "in charge" except to see that specifications are followed, then this amounts to a usurpation of the rights and duties of the general contractor and to confusion regarding the functions of each. We would point out that the contract in the instant case states in Special Conditions Schedule of Construction, Section 6, paragraph 5, Supervision and Erection of Apparatus, that "[t]he contractor is to give his own personal supervision and direction to the work, having a competent superintendent in charge of the work to whom the architect or through his assistants may give all such instructions and directions as may be necessary during the prosecution of the work in the absence of the contractor." The defendant did hire an assistant to give the supervision necessary to see that construction followed the design. According to the testimony he appeared on the job about once a week.

In the case before us there is no contractual provision giving the architects a right to stop the work. Though the general contractor's representative testified that he believed the architect could have stopped the work if it was not being correctly performed, he also testified that "I can find no authority in the general contract for the architect to stop

the work." The defendant himself testified that "he [the project inspector] had no authority to instruct any of the workmen in any of their duties. Neither I nor the project inspector had any authority at all to shut down the work."

In *Melvin v. Thompson,* 39 Ill.App.2d 413, 188 N.E.2d 497, the owner of a mortuary hired a painting contractor to repaint his sign. He told the contractor (page 416) that he intended to "'watch this job extra carefully'" and if he "'was not satisfied with the workmanship or quality of work as the same progressed, he would stop the painting immediately and no payment would be made' * * *." He also selected the type of paint and indicated the time when the job was to commence. The painting contractor furnished and erected the scaffold which gave rise to injury of a workman. In holding that the defendant owner was not a person in charge, the court said: "At most, the activities of defendant Thompson can be considered as an effort to require compliance with the contract and to ensure that the quality of work done was as agreed; he inspected the painting as it progressed and threatened to terminate the work if the job was not being done satisfactorily. In so doing, he could not be considered by reasonable men to have been 'in charge' of the work * * *." (39 Ill.App.2d 413, 417, 418.) In *Dusch v. Travelers Salvar Corporation,* 23 Ill.App.3d 104, 105, 318 N.E.2d 714, a case decided in this court, we upheld a judgment for the defendant notwithstanding the verdict where a jury had returned a verdict of $50,000 for the plaintiff. We said: "The issue of whether there was sufficient evidence for a jury to find that the defendant * * * had sufficient connection with the operation of the work to make him a person in charge within the meaning of the Structural Work Act is controlled by the recent decision of the Supreme Court of Illinois in *Carruthers v. B. C. Christopher & Co.,* 57 Ill.2d 376, 313 N.E.2d 457. Under the rationale of that opinion, the trial court's action was correct." In *Carruthers* the court said at page 378: "It is now fully acknowledged that one is not civilly liable under section 9 of the Structural Work Act * * * unless he has 'charge of' the work in question. In *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill.2d 305, 323, we held that an owner is not liable under the Scaffold Act unless he had charge of the particular operation which was a violation of the Act and caused the injury." Regardless of what party is alleged to be in charge—whether the owner, the contractor, a subcontractor, the architect or someone else, the test established in *Carruthers* seems to us to be applicable. In *Fentress v. United States,* 431 F.2d 824, 828 (7th Cir. 1970), the court said: "* * * the Scaffold Act as construed by the Illinois Supreme Court does not impose an absolute liability." The court in *Fentress* cited an earlier case,

*Cannon v. United States,* 328 F.2d 763 (7th Cir. 1964), where judgment for the defendant was affirmed. The court in *Fentress* said, "This court's affirmance there relied on two factors—that defendant had no control over hiring and firing of the independent contractor's employees, and had no control over the method of doing the work." 431 F.2d 824, 828.

The plaintiff cites *Voss v. Kingdon and Naven, Inc.,* 60 Ill.2d 520, 328 N.E.2d 297, where engineering contractors were sued by an injured workman. The trial court directed a verdict for the defendants; the appellate court remanded for a new trial. This was affirmed by the Supreme Court. But the contract in *Voss* provided that the engineer had authority to suspend work. Also, the court found that the contractor gave the engineers a broad authority over the construction job. We do not think there is a parallel between *Voss* and the instant case.

■■ It is our conclusion that under the facts and circumstances in the instant case the defendant was not a person in charge of the work within the meaning of the Structural Work Act. Reference is made to *Larson v. Commonwealth Edison Co.,* 33 Ill.2d 316, 211 N.E.2d 247, where the court attempted to give some meaning to the term "having charge of." We do not find this discussion helpful, particularly since the attempt at definition of the term in effect says that it is a generic term of broad impact which is made to extend to owners and others who *have charge of* the erection or alteration of any building or structure. Thus the term was used to define itself.

In view of our holding it is not necessary to consider defendant's other contentions.

Reversed.

EBERSPACHER, J., concurs.

Mr. JUSTICE CARTER, dissenting:

The majority opinion states that the "sole question on review is whether or not the defendant architect was a '* * * person having charge of the erection, construction, repairing, alteration, removal, or painting of any building, * * *' within the meaning of the Structural Work Act." The basis of the opinion is dependent upon the contract entered into by the owner of the hospital and the contractor, and the interpretation of this contract to determine whether or not the architect (defendant) had a right to stop the work. The majority conclude that for an architect to be "in charge of" a project he must have the authority "to stop the work" whenever such stoppage may be necessary for the proper execution of the contract.

In my opinion, the contract in question gave the defendant architect

broad authority over the construction job and he did have authority to stop the work. The jury in awarding damages to the plaintiff also concluded the defendant had this broad authority. This conclusion follows from a study of the entire contract which was prepared by the defendant and in particular The General Conditions. The holding of the majority is refuted by the following language in the contract:

"Paragraph 5 (Supervision): All work shall be done under the supervision of the architect, designated by the owner."

The following language appears in Paragraph 31 (Owner's Right to Stop Work or Terminate Contract) of the General Conditions:

"(a) If * * * (3) the contractor shall refuse or fail after notice of warning from the architect to supply enough properly skilled workmen, or proper materials, or * * *.

(b) The Contractor shall fail or refuse to regard laws, ordinances, or the instructions of the Architect * * *. The owner upon the certificate of the Architect that sufficient cause exists to justify such action * * * may * * * terminate the employment of the contractor."

There are also many instances in The Special Conditions which clearly indicate it was the intent of the contract that the defendant was to be classified as a "person having charge."

In *Voss v. Kingdon and Naven, Inc.*, 9 Ill.App.3d 30, the court reversed the trial court which had directed a verdict for the defendant at the close of all the evidence. The Supreme Court in *Voss v. Kingdon and Naven, Inc.*, 60 Ill.2d 520, affirmed the appellate court and quoted extensively from the *Larson v. Commonwealth Edison Co.* case. The term "having charge of" was defined in the *Larson* case and such definition clearly applies to the instant case. The following language in the *Larson* case is also significant:

"Even at common law retention of the right to control the work is sufficient to subject one to duty and tort responsibility, [citations] and the retention of the right to control must carry with it the same duty and responsibility under the Scaffold Act. Otherwise, the absurd result would be that a statute designed to broaden the common-law duty and to give added protection, would be construed as imposing a lesser duty than the common law. Certainly it was not the legislative intent that those retaining the right to supervise or control the work could be freed from duty by doing nothing, for section 9 imposes liability for a wilful failure to comply with any of the provisions of the act, as well as wilful violation. * * *" (33 Ill.2d 316, 325.)

The defendant's position in the *Voss* case was practically the same as the defendant in the instant case. Both defendants prepared the contracts and in their view the contract did not give them complete control. However, the Supreme and Appellate courts in the *Voss* case said the question was a proper one to submit to a jury.

The majority states whether or not an architect is a person in charge within the meaning of the Structural Work Act is in each situation a question of fact to be determined not only from written contracts available but also from surrounding circumstances and the role in fact assumed by the architect. In my opinion, the jury was correct in its determination that the defendant was a person in charge within the meaning of the Structural Work Act. The jury considered the written contract, all of the testimony and was properly instructed by the court. The verdict was proper in accordance with the law and the evidence and should be affirmed.