BERNARD ZUKAUSKAS, Plaintiff-Appellant, v. BRUNING, a division of AM International, Defendant-Appellee and Third-Party Plaintiff (Honeywell, Inc., Third-Party Defendant).

Second District   No. 2—88—0435

Opinion filed February 10, 1989.

Aldo E. Botti, Frank J. DeSalvo, and Peter Simic, all of Botti, Marinaccio, DeSalvo & Pieper, Ltd., of Oak Brook (John R. Wimmer, of counsel), for appellant.

Christine L. Olson and Patricia R. Morton, both of McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Bernard Zukauskas, filed suit in 1984 against the defendant, Bruning (Bruning), a division of AM International, asserting that defendant was liable to plaintiff under the Structural Work Act (the Act) (Ill. Rev. Stat. 1983, ch. 48, par. 60 *et seq.*) for failing to provide a safe ladder to plaintiff. The trial court granted summary judgment to the defendant, ruling that defendant was not in charge of the work and therefore could not be liable under the statute. Plaintiff's sole issue on appeal is whether the evidence was sufficient to raise a jury question as to whether defendant was in charge of the work for purposes of liability under the Act.

The evidence submitted through deposition transcripts and an affidavit shows the following. Bruning hired Honeywell, Inc. (Honeywell), to maintain and repair its air conditioning unit on the roof of its building. The plaintiff, Bernard Zukauskas, a Honeywell employee, fell from a ladder on his climb down from Bruning's roof after servicing the air conditioner. The 16-foot aluminum extension ladder was owned by Bruning. Plaintiff testified at his deposition that the ladder was positioned in a small storage room on the second floor so that it extended to a roof hatch leading to the roof. Zukauskas had been to Bruning many times and always found the ladder in the same position, extended to the roof hatch. He stated the ladder was in poor condition; it was not attached to anything, and it did not have skid pads on the bottom. The first time he went to Bruning, he was told how to get to the roof by Stuart Mogren, a Bruning employee in charge of maintenance. Zukauskas said Mogren took him to the storage room and told him the air conditioner was on the roof. Zukauskas complained to Mogren that the ladder was in poor condition but was told by Mogren the company could not afford to fix it. He said that he also told Pete Janda, another maintenance person with Bruning, about the ladder.

Three other Honeywell employees stated in depositions that either Mogren or another Bruning maintenance person showed them how to get to the roof by way of the ladder in the storage room. They also complained to Mogren about the ladder. One Honeywell employee, James Luby, stated he suggested to Mogren attaching the ladder to the floor and roof hatch but was told by Mogren that it would not be necessary. Luby also made this suggestion to his boss at Honeywell, Ron Zigler, and was told it would not be practical. Luby also testified that the ladder could not have been tied down with rope because there was nothing to tie it to. Mogren denied that anyone complained to him about the ladder; if someone had complained, he stated he would have been in charge of repairing the ladder if it were not safe.

Plaintiff and the other Honeywell employees stated that neither Mogren nor anyone else from Bruning told them how to perform their work. Zukauskas stated that he had been to Bruning numerous times to repair the air conditioner, and he did not report to anyone at Bruning before he began his work. On the day plaintiff was injured, he went straight to the storage room and to the roof. Zukauskas stated it would have been possible for him to use the ladder he had on his truck for the job, but he felt it would have been quite difficult to maneuver the ladder through the office to get to the storage room. Honeywell employee Jim Carney stated that a Honeywell ladder on a truck could not be used to get to the roof from outside the building because the ladder was not long enough. Carney said he did not know of any other way to the roof.

Mogren stated in an affidavit that he never told Honeywell employees how to do their work and never inspected their work. He also stated he never told any Honeywell employee that he had to use their ladder. In his deposition, Mogren stated there was also an outside attached ladder that extended to the roof.

■■ ■ Plaintiff contends that evidence showing defendant's ownership and maintenance of the ladder he fell from is sufficient to raise a jury question as to whether defendant was in charge of the work. It is well settled that mere ownership is insufficient to impose liability under the Structural Work Act. Liability may fall only upon a person or entity "having charge of" the work. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 319-20.) Section 9 of the Act provides:

> "Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall com-

ply with all the terms thereof ***." (Ill. Rev. Stat. 1983, ch. 48, par. 69.)

The question of whether one was in charge of the work is a question of fact that requires an evaluation of the totality of circumstances. (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481.) Ordinarily, this is a decision for the jury, though summary judgment is proper where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (*Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 112; Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) The court's task on such a motion is not to resolve a disputed factual question, but rather to determine whether one exists. *Puttman*, 118 Ill. 2d at 112.

■ Defendant contends it was not in charge of the work because it did not control or direct plaintiff's work in any way. Plaintiff responds that control and supervision are only two of many factors to consider in determining whether defendant was in charge and contends that defendant could be found in charge because it directed plaintiff to use its ladder to get to the roof. Our supreme court has not offered a comprehensive definition of the phrase "in charge of." In *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, the court made clear that "having charge of" is a phrase of "broad import," stating:

> "While it may be conceded that some of the decisions in this jurisdiction involving the Scaffold Act appear to have equated 'having charge' with 'supervision and control' in varying degrees, it is our opinion the language of the statute, and the legislative intent it reflects, do not permit the conclusion that the terms are the inflexible and unbending legal equivalent of the other. The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it. As was said of the word 'charge' in *People v. Gould*, 345 Ill. 288, 323: 'The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. "To have charge of" does not necessarily imply more than to care for or to have the care of.' *** [C]onsistent with its beneficent purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise and control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others

who have charge of the erection or alteration of any building or structure." 33 Ill. 2d at 321-22.

■■ Though the supreme court has resisted setting down a test for the "in charge" question, the court recently noted with approval 10 factors considered by the appellate court in *Chance v. City of Collinsville* (1983), 112 Ill. App. 3d 6, 11. (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 452.) The factors include whether the defendant: (1) supervised and controlled the work; (2) retained the right to supervise and control the work; (3) constantly participated in the ongoing activities at the construction site; (4) supervised and coordinated the subcontractors; (5) took responsibility for safety precautions at the jobsite; (6) had authority to issue change orders; (7) had the right to stop the work; (8) owned the equipment at the jobsite; (9) was familiar with construction customs and practices; and (10) was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits. Neither plaintiff nor defendant analyzed this issue strictly according to the 10-factor list; however, it will be helpful to review these factors here.

■■ It is undisputed that the first four factors do not exist in this case; defendant did not supervise or retain the right to supervise Honeywell's work; defendant did not constantly participate in Honeywell's work; and defendant did not supervise and coordinate the workers. Plaintiff contends in his reply brief that the seventh factor, the right to stop the work, exists here because the defendant could have ordered Honeywell to stop working and not renew its contract. This is not the type of right contemplated by the courts in determining whether a defendant was in charge. In *McGovern v. Standish* (1976), 65 Ill. 2d 54, 68, the court stressed that the right to merely reject work was not the same as having the right to stop the work "if it were being done in a dangerous manner." The evidence does not establish that defendant had a right to stop Honeywell from performing its work if it felt Honeywell was not acting safely. Plaintiff also claims that the defendant engaged in inspection of the work when it used the air conditioner. This clearly is not the type of inspection the courts have considered relevant in determining the "in charge" question. See *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 490.

It is undisputed that the eighth factor, owning equipment at the jobsite, is present in this case. The defendant owned and maintained the ladder used by plaintiff and other Honeywell employees to get to the roof. The difficult question is whether this fact means that a jury could find the defendant in charge of the work in that defendant (1)

took responsibility for safety precautions at the jobsite; (2) was familiar with construction customs and practices; and (3) was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits.

▪ Defendant in this case did more than simply own the ladder. Defendant's maintenance supervisor, Stuart Mogren, testified in his deposition that he was responsible for maintaining a safe ladder. Furthermore, Mogren showed the plaintiff and other Honeywell employees how to get to the roof by the ladder in the storage room. Plaintiff and three other Honeywell employees testified that they complained to Mogren about the safety of the ladder, and Mogren replied that there was nothing wrong with it or that they could not afford to replace it. Finally, Honeywell employee James Luby stated that he suggested to Mogren a way to secure the ladder to make it safer, but Mogren told him that was not necessary. Luby also testified that it was not possible to tie down the ladder with rope because there was nothing to tie the rope to. Given these facts, a jury could find that defendant took some responsibility for safety precautions at the jobsite; that defendant was familiar with construction custom and practice concerning ladders; and that defendant was in a position to assure worker safety by providing safe access to the roof.

The question still remains as to whether the presence of these factors is enough to support liability in this case. While it is undisputed that defendant was in charge of the safety of the ladder used by the plaintiff, it is also undisputed that defendant did not tell plaintiff or any other Honeywell employees how to perform their job. Furthermore, defendant did not tell plaintiff or other Honeywell employees that they had to use Bruning's ladder, and plaintiff stated that he could have used his ladder on the truck, but it would have been difficult to maneuver through the second-floor office.

In *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, the supreme court upheld liability against a defendant who hired another company to maintain its facility even though a contract provided that the company was responsible for all safety precautions. In *Simmons*, defendant, Union Electric, hired Sachs Electric Company to install and maintain electrical power to a Union Electric power plant. The plaintiff, an employee of Sachs, was injured while working at the plant when he fell from a permanently affixed ladder that had become covered with oil. Oil on the ladder was not unusual at the plant. On at least one occasion, Union Electric hired an outside contractor to clean the oily surfaces. Evidence also showed that Sachs had knowledge of the oily surfaces, and according to the terms of the contract, Sachs

was responsible for all appropriate safety precautions necessary or advisable for the prevention of accidents to Sachs employees. (*Simmons*, 104 Ill. 2d at 450.) The supreme court found that the evidence supported the determination that Union Electric was in charge of the work, citing the fact that the work performed by Sachs was subject to inspection and final acceptance, that Union Electric employees visited the plant regularly when the plant was closed, and that Sachs employees only entered the plant at the request of Union Electric. *Simmons*, 104 Ill. 2d at 452.

We find the business relationship between Union Electric and Sachs similar to the relationship of defendant and Honeywell in this case. As in this case, Union Electric hired another company to do maintenance and repair work on its building. It did not tell that company how to perform its work and was not responsible for the safety practices of that company. It did, however, own and maintain a ladder which caused injury to an employee of the hired company.

In a recent opinion, the Appellate Court for the First District ruled on a case with facts very similar to this case and concluded that the evidence supported the jury's determination that defendant was in charge of the work. (*McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 530.) In *McKanna*, the plaintiff, employed by McDonough Plumbing and Heating, Inc., went to Duo-Fast's plant to perform warranty work on its air conditioning system which was partly on the roof. Climbing down from the roof, plaintiff fell from an affixed wall ladder in Duo-Fast's boiler room. The boiler room ladder provided one of two access routes to the roof. Plaintiff was aware of the other access route but did not use it. The court held:

> "Duo-Fast need not have been entirely in charge of the repairs in order to have become liable under the Structural Work Act; it was sufficient if it was shown to have been in charge of some aspect of the work. (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247.) In the present case, Duo-Fast had exclusive control over the boiler room ladder, contained within a locked room, which it knew was hazardous and had even promulgated a rule against its use. It was Duo-Fast's employees who unlocked the access door to the boiler room and the hatch to the roof which enabled McKanna to make use of the ladder utilized in the work. The jury could have found from this evidence that Duo-Fast was in charge of this phase of the work and was in a superior position to determine the means by which the work would be accomplished." (*McKanna*, 161 Ill. App. 3d at 529-30.)

As in this case, there was no evidence that defendant supervised the work or told plaintiff what safety precautions to take on the job. Furthermore, defendant did not tell plaintiff he had to use that ladder and did not prevent plaintiff from using another ladder that was available.

Defendant contends that two supreme court cases support the trial court's order of summary judgment: *Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107; *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376. In *Puttman,* the supreme court held that a company that merely furnishes equipment and operators who were to work under the sole direction of another contractor could not be held in charge of the work. The court cited *Huckabee v. Bell & Howell, Inc.* (1970), 47 Ill. 2d 153, 157-58, where it was held that a defendant which supplied a possibly defective scaffold was not in charge of the work. (*Puttman,* 118 Ill. 2d at 112.) Defendant contends that as in *Puttman* and *Huckabee,* it was merely supplying equipment. Unlike *Puttman* and *Huckabee,* however, the defendant here did more than just supply equipment. In *Puttman* and *Huckabee* the equipment was supplied to another contractor who had complete discretion over the use of that equipment. The supplier had relinquished control. Here, defendant not only supplied the ladder, it controlled its use. The evidence taken in the light most favorable to the plaintiff shows that Mogren told Honeywell employees that the ladder did not need to be secured and did not need to be replaced.

In *Carruthers* the court upheld the trial court's summary judgment order in favor of a defendant who contracted to have his grain silo repaired. (*Carruthers,* 57 Ill. 2d at 381.) Defendant in that case hired Okaw Valley Construction Company to repair defendant's grain elevators and grain bins. The plaintiff, an employee of Okaw Valley, fell from the top of defendant's grain bin while attempting to repair it. There was no guard or railing around the cap of the bin, where a worker was required to stand to assist in repairing it. (*Carruthers,* 57 Ill. 2d at 378.) The supreme court reversed the appellate court, which found defendant sufficiently in charge of the work. The court noted that no one connected with the defendant told plaintiff how to do his job and that the manner of doing the work was left up to the plaintiff and his boss. (*Carruthers,* 57 Ill. 2d at 378-80.) Though this case seems similar to the instant case in many respects, it is distinguished on one significant point. In *Carruthers,* there is no evidence that defendant was involved in any way with the work done by plaintiff. In this case there is evidence that defendant's maintenance supervisor was involved; he showed plaintiff and other Honeywell employees how

to get to the roof by using defendant's ladder, which he had control of.

Defendant also cites *Egizio v. Majetich* (1988), 172 Ill. App. 3d 758. In *Egizio*, the Appellate Court for the Third District upheld the trial court's summary judgment order against plaintiff, holding that the defendant homeowners were not in charge of work done by plaintiff who fell from a ladder while remodeling defendants' house. (*Egizio*, 172 Ill. App. 3d at 762.) The evidence showed that defendants had the legal authority to halt the work at any time and to instruct the plaintiff to redo work or alter methods, though they never exercised this power. The defendants helped plaintiff work on the house, but the plaintiff had superior knowledge about the work and the defendants acted as plaintiff's gophers. The decision does not indicate whether the ladder was owned by plaintiff or defendants, but does state that the plaintiff sometimes used defendants' tools and sometimes his own. (*Egizio*, 172 Ill. App. 3d at 760.) The court held that imposing liability in this situation would place an unreasonable burden on all homeowners who contract for home improvements. *Egizio*, 172 Ill. App. 3d at 762.

*Egizio* is distinguished from this case in two respects. First, it is not clear that the ladder in *Egizio* was owned by defendants. Second, and more importantly, the defendants in *Egizio* were homeowners with clearly no expertise of construction methods and safety. Unlike *Egizio*, imposing liability here does not pose an unreasonable burden on a party with no knowledge of safety methods.

■ The Act is liberally construed in order to help achieve its goal of protecting those persons engaged in extrahazardous occupations (*McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146); however, the scope of the Act should not be expanded through strained or unnatural interpretations, especially when the injured party has recourse to his normal worker's compensation and tort remedies. (*Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024.) The Act was never intended to cover all construction activities or all injuries at and around construction sites. *Urman v. Walter* (1981), 101 Ill. App. 3d 1085.

■ Thus, the Act should not be stretched to apply to defendants who clearly are not in charge of any part of the work. This case does not require that stretch. Though defendant was not in charge of the work in the sense that it employed someone to supervise Honeywell's work on the air conditioning unit itself, there is sufficient evidence to allow a jury to conclude that defendant was in charge of the work because it owned, maintained, and controlled the ladder plaintiff used to

get to the roof. This case involves more than merely furnishing equipment. Under the supreme court's holding in *Simmons* (104 Ill. 2d 444) and the first district case of *McKanna* (161 Ill. App. 3d 518), we find the facts concerning defendant's control of the ladder provide sufficient evidence to create a question for the jury as to whether defendant was in charge of the work under the Act.

The decision of the circuit court of Du Page County granting summary judgment is reversed and the cause remanded.

Reversed and remanded.

UNVERZAGT, P.J., and INGLIS, J., concur.