PERRY L. BAKER, Plaintiff-Appellant, v. STEVEN D. BOOMGARDEN *et al.*, Defendants-Appellees.

Second District    No. 2—92—1366

Opinion filed June 14, 1994.

Joseph A. Morrissey and Sandra J. Slaga, both of Joseph A. Morrissey & Associates, of Rockford, for appellant. .

Karen L. Kendall and Brad A. Elward, both of Heyl, Royster, Voelker & Allen, of Peoria, and Mark J. McClenathan and Douglas J. Pomatto, both of Heyl, Royster, Voelker & Allen, of Rockford, for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Perry Baker, filed a two-count complaint against defendants, Steven Boomgarden (Steven) and Kathleen Boomgarden (Kathleen), to recover for injuries that he sustained while reroofing a two-flat building (building) owned by defendants. Count I alleged that defendants violated the Structural Work Act (740 ILCS 150/1 *et seq.* (West 1992)). Count II alleged that defendants acted negligently in regard to safety on the jobsite. Defendants filed a motion for summary judgment after discovery was closed. The trial court granted

defendants' motion for summary judgment as to both counts. Plaintiff's motion to reconsider the trial order was denied.

Evidence submitted through the pleadings, the parties' depositions, and related documents showed the following. At the time of plaintiff's injury, defendants were owners of a two-flat apartment building at 1648 Sixth Avenue in Rockford, Illinois. Defendants rented the second floor to a tenant and lived on the first floor. A tenant was living in the second-floor apartment on the date of plaintiff's injury.

Steven was employed by Commonwealth Edison at its nuclear power plant in Byron and held a license with the Nuclear Regulatory Commission of the United States of America to run a nuclear reactor. Kathleen was a homemaker.

On or about September 26, 1987, defendants received a bid from Blue Horizon Roofing Company (BHR) to tear off the old shingles and reshingle the roof of the building. Defendants accepted the bid of between $2,600 and $2,900 and entered into a contract with BHR on or about October 5, 1987. Defendants gave BHR's owner, Gary Wilcox (Wilcox), a $1,000 down payment and agreed to pay an additional $850 when BHR started the job. Steven negotiated and signed the contract with Wilcox. On October 7, 1987, Wilcox telephoned defendants and said he would be starting on the roof the next morning. Defendants believed that work would begin immediately and would be completed within three to four days.

Wilcox failed to show up on October 8, 1987, and for the next $3^{1}/_{2}$ weeks, defendants attempted to contact him. Wilcox had no telephone, and his relatives refused to reveal his whereabouts.

On October 30, 1987, Wilcox, plaintiff, and another worker showed up at defendants' apartment building to begin work. Wilcox got the workers started, left the jobsite, and did not return that day. When plaintiff left the jobsite at the end of the day of October 30, 1987, a good portion of the shingles on one end of the apartment building had been torn off but were only partially covered with protective plastic.

Neither Wilcox nor any of his workers showed up again at the jobsite until noon on Monday, November 2, 1987. A few days earlier, Steven ordered Wilcox to put plastic down in order to prevent rainwater from entering his tenant's apartment through the partially exposed roof.

On November 2, 3, and 4 Wilcox and plaintiff arrived at the apartment building to begin work, and on each day Wilcox left the jobsite, leaving plaintiff to do the work alone. On November 3 and 4 Steven worked on the roof, tearing off old shingles with a tool

provided by the plaintiff. Steven did this to move the project along. Mid-morning on Thursday, November 5, 1987, Steven telephoned plaintiff at home. Plaintiff had been waiting for Wilcox to give him a ride to the jobsite. Steven drove to plaintiff's home and brought him to the building. After working on the roof with plaintiff for a few hours, Steven had to go to work. Before leaving for work, Steven told plaintiff not to go back up on the roof by himself. He telephoned Wilcox because he did not want plaintiff on the roof by himself. Steven then left for work, with the understanding that Wilcox would be at the jobsite within 15 minutes.

Plaintiff worked alone on the roof from approximately 1 p.m. to 5:15 p.m. When Kathleen no longer heard plaintiff working on the roof, she went outside to check and found plaintiff lying unconscious on the ground. Plaintiff sustained, among other injuries, permanent brain damage and several fractures. Wilcox never again showed up for work. Defendants had to contract with another roofing company to complete the job.

Steven had no experience as a roofer. Plaintiff had worked on approximately 12 roofs in the three months prior to the accident; he had at least 13 years' experience as a roofer. Also, plaintiff could not explain why, prior to his accident, the work on the roof was going so slowly.

Plaintiff initially argues that the trial court erred in granting defendants' motion for summary judgment as to count I. He contends that the evidence reflected a number of factual issues which should have been resolved by the trier of fact. Specifically, he maintains a question of fact remains as to whether defendants had charge of the roofing job. In response, defendants argue that there is no evidence whatsoever which indicates that they had any control over the work plaintiff was doing.

As this court recently wrote in *Graf v. St. Luke's Evangelical Lutheran Church* (1994), 253 Ill. App. 3d 588:

> "Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party to judgment is clear and free from doubt. [Citation.] The purpose of a summary judgment proceeding is to determine whether there are any genuine issues of material fact which should be tried. [Citation.] In making this determination, the evidence is to be construed strictly against the movant and liberally in favor of the opponent. [Citation.] Only if the pleadings, depositions and affidavits reveal no genuine issue of material fact is the moving party entitled to judgment as a matter of law." *Graf*, 253 Ill. App. 3d at 591.

The Structural Work Act reads in pertinent part:

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this Act, shall comply with all the terms thereof ***." 740 ILCS 150/9 (West 1992).

The subject dispute is whether defendants had charge of the work. In *Zukauskas v. Bruning* (1989), 179 Ill. App. 3d 657, this court set out the principal factors to be used to determine who was "in charge of the work."

The *Zukauskas* court stated:

"The factors include whether the defendant: (1) supervised and controlled the work; (2) retained the right to supervise and control the work; (3) constantly participated in the ongoing activities at the construction site; (4) supervised and coordinated the subcontractors; (5) took responsibility for safety precautions at the jobsite; (6) had authority to issue change orders; (7) had the right to stop the work; (8) owned the equipment at the jobsite; (9) was familiar with construction customs and practices; and (10) was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits." *Zukauskas*, 179 Ill. App. 3d at 662.

Plaintiff argues that factors 1, 3, 7, 8, and 10 are applicable to the instant cause. Regarding the first factor (defendants supervised and controlled the work), plaintiff contends that the record contains the following facts demonstrating defendants' supervision and control of the work. On October 30, 1987, Wilcox finally showed up at the jobsite, and Steven instructed him on which part of the roof to begin work. Later, Steven told Wilcox to do whatever was necessary to keep rainwater from leaking in the upstairs apartment. On three occasions, Steven worked on the roof, recommending to plaintiff alternative methods of removing old shingles. Defendants contend that, as owners, they had the right to direct where the roofing job would commence. Further, they assert that their directions to put up the plastic covering were for the purpose of protecting the building's upstairs, not to take control BHR's activities. Finally, defendants contend that Steven's work on the roof in no way indicates that he was controlling the reroofing job.

We fail to see how any of Steven's alleged actions demonstrate anything but a homeowner's desire to complete a long-delayed roofing project before winter set in. Regarding Steven's instruction on what part of the roof to begin, such direction does not reflect supervision or control. There was no evidence that, after stating his preference, Steven remained on the jobsite directing the workers and deciding how the task was to proceed. As to Steven's request that Wilcox put

a plastic covering over the exposed roof, such a direction was for the purpose of accomplishing a protective measure which either Wilcox or plaintiff should have done without prompting. Such direction does not reflect supervision or control. Finally, the fact that Steven performed some work on the task does not demonstrate that he acted in a supervisory or controlling manner. The evidence shows that he worked on the roof so that the project would be done in a somewhat timely manner. While he may have made a suggestion or two about doing the job, Steven, who had no roofing experience, was only helping out plaintiff, who had been working on roofs for a number of years. Moreover, there is no indication that plaintiff followed any of the suggestions.

Next, plaintiff argues that the third factor (defendants' constant participation in ongoing activities at the construction site) applies to the instant appeal. Plaintiff attempts to portray Steven as a willing participant in reroofing the building. Admittedly, the evidence shows that Steven worked on the roof on November 3, 4, and 5. It is readily apparent that he was faced with a choice: either let plaintiff, who was working alone, slowly progress on the project into November or do some of the unskilled work (removing old shingles) himself. Steven chose the latter approach, not out of a desire to join in the work, but to move the frustratingly slow project along. In reviewing this factor, a court must look not only at a defendant's participation in the project but should determine the reason for it as well.

Further, plaintiff asserts that the seventh factor, the right to stop work, is applicable here. Plaintiff baldly contends that, as owners of the building, defendants could stop the work at any time. Interestingly, as an example of this, plaintiff points to Steven's failed attempt to stop plaintiff from going back up on the roof alone on November 5. Defendants maintain that, at most, Steven's request that plaintiff not go on the roof until Wilcox arrived was only a temporary request to suspend the job. Again, it is readily apparent that Steven's attempt to keep plaintiff from going back on the roof alone stemmed from his concern for plaintiff's safety, not a desire to exert control over the work. Furthermore, plaintiff did go back on the roof, an act which, if anything, reflected defendants' lack of control over the project.

Next, plaintiff argues that factor eight, defendants' ownership of equipment used on-site, is present in this case. This assertion is patently without merit. The evidence shows that virtually all the equipment used on this job was owned by Wilcox.

Finally, plaintiff argues that the tenth factor (defendants were in a position to assure worker safety or alleviate equipment deficiencies or improper work habits) applies to the appeal at bar. Plaintiff

contends that, by telephoning Wilcox about his concern over plaintiff's working on the roof alone, Steven put himself in the position of assuring plaintiff's safety. In contrast, defendants contend that they had no authority to terminate plaintiff for improper work habits and that they did not own or have access to any safety devices.

Plaintiff testified that the subject roof was angled but not nearly as steep as other roofs he had worked on. He further stated that, with BHR, he had never worked with safety ropes or other types of safety equipment. Only once in his roofing career did he use a safety line. Further, Steven stated that he did not wear any safety equipment during his work on the roof.

The evidence clearly demonstrates that Steven had no access to safety equipment and that he was subjected to the same allegedly unsafe working conditions as plaintiff. BHR did not provide any safety equipment. Moreover, Steven did not have the requisite knowledge of roofing to know what improper work habits were. This factor does not exist in this case.

We find that there are no genuine issues of material fact as to whether defendants were in charge of the work. Accordingly, the trial court properly granted defendants' summary judgment regarding count I. To impose liability under the instant record "would be to place an unreasonable burden on all homeowners who contract for improvements on their homes." *Egizio v. Majetich* (1988), 172 Ill. App. 3d 758, 762.

Plaintiff's other argument is that the trial court erred in granting defendants' motion for summary judgment on count II (negligence). In an action for negligence, plaintiff must put forward sufficient facts to establish a duty owed by defendants to him, a breach of that duty, and an injury proximately caused by the breach. (*Graf*, 253 Ill. App. 3d at 591.) If the court is unable to infer a duty on the part of defendants, no recovery is possible, and summary judgment is proper. *Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 411.

Regarding this issue, plaintiff argues the following. Steven worked on the roof enough time to reasonably foresee a serious injury to plaintiff. Defendants could have guarded against injury to plaintiff by stopping the work or by ordering plaintiff to use scaffolding or other means to prevent a fall. Further, by working a number of days on the roof, Steven assumed a duty of care to plaintiff. Moreover, Steven breached this duty by failing to stop the work until adequate safety precautions were put in place. In response, defendants argue, *inter alia*, that the evidence does not demonstrate a duty owed by defendants to plaintiff and, further, a breach of same.

Plaintiff's argument is not compelling. There is no evidence that

defendants were at all knowledgeable about customs or practices of the roofing trade. Given this ignorance, defendants were in no position to foresee serious injury. As to whether defendants should have stopped the work and required plaintiff to employ safety measures, plaintiff's testimony demonstrates that BHR and other roofers rarely, if ever, employed such precautions. If the roofing industry does not employ such measures, how can defendants possibly be found to be negligent for not demanding safety measures be put in place? Furthermore, as stated above, Steven worked on the roof only to get the job done more quickly. Under such circumstances, this court will not find that defendants assumed a duty of care to plaintiff.

Admittedly, this is an unfortunate case in which plaintiff was cut adrift by an irresponsible employer. Nevertheless, these facts fail to demonstrate that defendants assumed a duty to assure plaintiff's safety. The trial court properly granted defendants' motion for summary judgment on the negligence count.

For the reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

McLAREN and PECCARELLI, JJ., concur.