HEINRICH W. AXEN, Plaintiff-Appellant, v. OCKERLUND CONSTRUCTION COMPANY et al., Defendants (Dick's Crane Rental Service, Inc., Defendant-Appellee).

First District (2nd Division)   No. 1—95—1610

Opinion filed May 14, 1996.

Anesi, Ozmon & Rodin, Ltd., of Chicago (Bruce M. Kohen and Darius H. Bozorgi, of counsel), for appellant.

Schoen & Smith, Ltd., of Chicago (Susan Fox Gillis, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:
Heinrich W. Axen (plaintiff) filed this action against defendants,

charging them with negligence and with violations of the Structural Work Act (740 ILCS 150/1 *et seq*. (West 1992)) (the Act). Plaintiff claims that defendants caused him to be injured while he was performing his duties "on and about" a beam that was being lifted by a crane which his employer, Decking & Siding, rented from Dick's Crane Rental Service, Inc. (defendant). His complaint alleges that all defendants "participated in" coordinating, scheduling, inspecting, and maintaining the work performed at the site, and that all defendants had the authority to "stop the work, refuse the work and materials, and order changes in the work, in the event the work was being performed in a dangerous manner or for any other reason."

Defendant filed a motion for summary judgment (735 ILCS 5/2—1005 (West 1994))) on July 28, 1993, asserting that because it was not "in charge of the work in question," it could not be held liable for a violation of the Act nor could it be held liable for negligence. In support of its motion, defendant relied on the affidavit of Richard D. Hughes, president of defendant, incorporating therein a copy of the rental agreement. In his affidavit, Hughes stated that he leased a 20-ton crane and crane operator to Decking & Siding on March 13, 1990. Hughes also deposed that, contrary to plaintiff's allegations, the "actual practice" pursuant to the rental agreement was that defendant had "no responsibility for taking safety precautions at the job site"; "had no right to stop the work for safety violations"; "was not in a position to insure worker safety and to alleviate deficiencies in equipment or improper work habits"; and that "once the crane operator arrived at the job location, he took all of his supervision and direction from Decking & Siding."

The relevant provisions of the agreement are as follows:

"Lesser [*sic*] hereby leases the equipment described on the reverse side and furnishes operating personnel to Lessee subject to the following conditions.

1. NO OTHER AGREEMENT: This document is the complete agreement of the parties and supersedes all other agreements written or oral.

2. INDEMNIFICATION: Lessee agrees that the equipment and all operating personnel, including Lesser's [*sic*] employees, are under Lessee's exclusive jurisdiction, supervision and control and agrees to indemnify and save Lesser [*sic*], its employees and agents harmless from all claims, alleged or real, for death or injury to persons, including Lessor's employees, and from all loss, damage or injury to property, including the equipment, arising in any manner out of Lessee's operation or control. Lessee's duty to indemnify herein shall include all cost and expense arising out of

all claims specified herein, including all court and/or arbitration costs, filing fees, attorney's fees and costs of settlement.

3. COMPETENT OPERATION BY LESSEE: Lessee agrees to provide competent and experienced personnel to direct the operation of the equipment and agrees to use said equipment in accordance with the manufacturer's instructions and agrees not to exceed the manufacturer's rated load capacities for such or similar equipment. Lessee expressly agrees that counterweight in excess of the manufacturer's specifications shall not be used."

In opposing the motion for summary judgment, plaintiff included excerpts from the deposition of Ralph Castle, the crane operator employed by defendant. It was Castle's understanding that when he was on a particular jobsite, he made decisions regarding how the crane was operated on behalf of defendant. Castle stated that just prior to the injury, J.R. Red Vaughn, of Decking & Siding, was giving him hand signals, instructing him to operate the crane to unload beams off a truck onto a ground area. When the beam was raised to a level where Castle could see it, he saw Vaughn instruct plaintiff and another employee to load 75-pound bags of bolts onto the beam. When 10 of those bags were placed on the beam, the load became "unstable" and began to rotate, which forced the bags to fall off the beam. Plaintiff was injured while trying to stop the bags from rolling off the beam with his hand.

Castle did not believe that it was safe to have so many bags of bolts placed on the beam. He claimed that as a crane operator, he could make only safe lifts. If he received a hand signal from Vaughn to perform an unsafe lift, Castle believed he had the authority not to make the lift until he deemed it safe to do so. He claimed that he had the authority to reject "any hand signals given" to him on the job for lifts he thought were unsafe. He testified that just prior to plaintiff's injury, he could have indicated to Vaughn that the lift was unsafe. He stated that he did not stop the lift despite the fact that he thought it was unsafe because, "if it flipped over, it wouldn't have hurt anybody as long as nobody was in the way." Although Castle asserted that he had the authority to walk off the job if it continued to be unsafe, he admitted that if he refused to perform a lift, it could result in an argument. Castle also averred that defendant gave him the authority not to perform a lift if it would cause damage to the crane equipment. Castle believed that defendant had the authority to take him off the job and remove the crane from the job.

Plaintiff also submitted excerpts from Hughes' deposition, wherein much of his testimony ran contrary to the statements contained in his sworn affidavit accompanying defendant's motion.

Hughes testified that if, in the crane operator's opinion, he believes that he is being given unsafe instructions, the operator will not follow such instructions. Hughes' crane operators were instructed to stop using the crane immediately if there was a problem relating to its safe operation. Hughes was asked, "It's correct to say that the crane operator has some responsibility to make sure that the workers that are working with the crane are not injured, correct?"; he answered, "Oh, yes, right." He was also asked, "The crane operator does have some responsibilities, though. If they tell him to do something that's dangerous, he can say no no matter how emphatic they are, right?"; Hughes answered, "Right."

On August 25, 1994, Judge Joseph N. Casciato granted summary judgment in favor of defendant, citing *Puttman v. May Excavating Co.*, 118 Ill. 2d 107, 112, 514 N.E.2d 188 (1987), and stating that under the totality of the circumstances, the "naked statement of the employee [Castle]" was not enough to establish a genuine issue of material fact to preclude summary judgment. The judge also dismissed the negligence count.

On April 13, 1995, Judge Gary L. Brownfield entertained plaintiff's motion to reconsider Judge Casciato's decision, and in affirming Judge Casciato's decision, he reiterated that whether or not defendant had charge of the work is based on a totality of the circumstances analysis. In contrast to Judge Casciato's statement, however, Judge Brownfield was of the opinion that, in the instant case, having the right to stop work for safety reasons could be a question of fact based on Castle's testimony that he had such a right. He found that the case at bar differed from *Puttman* in that respect. However, under the totality of the circumstances rubric, Judge Brownfield determined that even if defendant had the right to stop the work for safety reasons and for the protection of the equipment, no other element of supervision and control was present. He stated, "there is no authority to issue change orders. There is no right to stop any work other than for safety measures alone." He found that defendant did, in fact, own the equipment which was alleged to have caused the injury; that defendant had knowledge of construction customs and practices regarding the operation of the crane; and that defendant was in a "position to assure workers' safety by correcting unsafe habits and equipment deficiencies as to the crane only." Ultimately, the judge found that although plaintiff may have demonstrated that defendant satisfied some of the 10 indicia of control, they were not enough, and that summary judgment was properly granted in defendant's favor. In affirming the dismissal of the negligence count, Judge Brownfield found that in order to have negligence, there must have been control, which was not present.

■ This court's review of the trial court's entry of summary judgment is *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 411, 615 N.E.2d 736 (1993). A motion for summary judgment is a "drastic means of disposing of litigation" and is granted only when " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986), quoting Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c) (now 735 ILCS 5/2—1005(c) (West 1994)).

■ To maintain a cause of action against a defendant under the Structural Work Act (the Act) (740 ILCS 150/1 *et seq.* (West 1992)), plaintiff must establish, among other elements, that defendant "had charge of the work" which proximately caused the injury. *Cockrum v. Kajima International, Inc.*, 163 Ill. 2d 485, 491, 645 N.E.2d 917 (1994). In the instant action, the trial court granted defendant's motion for summary judgment, finding that defendant did not have charge of the work. "Whether a defendant is a person 'having charge of' the work under the Act is primarily a factual inquiry which involves numerous factors, including those enunciated in *Chance v. City of Collinsville* (1983), 112 Ill. App. 3d 6, 11." *Cockrum*, 163 Ill. 2d at 492. "The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it." *Larson v. Commonwealth Edison Co.*, 33 Ill. 2d 316, 321, 211 N.E.2d 247 (1965). The factors employed in order to determine whether a defendant has charge of the work were set forth in *Chance*:

> "(1) supervision and control of the work; (2) retention of the right to supervise and control the work; (3) constant participation in ongoing activities at the construction site; (4) supervision and coordination of subcontractors; (5) responsibility for taking safety precautions at the jobsite; (6) authority to issue change orders; (7) the right to stop the work; (8) ownership of the equipment used on the jobsite; (9) defendant's familiarity with construction customs and practices; and (10) defendant's ability to assure worker safety or alleviate equipment deficiencies or improper work habits." *Cockrum*, 163 Ill. 2d at 492-93, citing *Chance*, 112 Ill. App. 3d at 11.

All 10 factors do not have to be satisfied in order to find a defendant liable under the Act. See *Zukauskas v. Bruning*, 179 Ill. App. 3d 657, 534 N.E.2d 680 (1989). The court must consider the "totality of the circumstances" in determining whether a party is in charge of the work. *Ryan v. E.A.I. Construction Corp.*, 158 Ill. App. 3d 449, 457, 511

N.E. 2d 1244 (1987). Also, the supreme court has "repeatedly held" that the Act should be given "a liberal construction to effectuate its purpose of protecting persons engaged in extra-hazardous occupations of working in and about construction." *Cockrum*, 163 Ill. 2d at 497. Furthermore, it is possible for more than one "person" to have charge of the work or a "phase of the work in connection with which an injury occurs." *Emberton v. State Farm Mutual Automobile Insurance Co.*, 71 Ill. 2d 111, 123, 373 N.E.2d 1348 (1978).

■ Plaintiff argues that the authority to stop work for safety purposes is enough for a trier of fact to find that defendant had charge of the work, citing *Voss v. Kingdon & Naven, Inc.*, 60 Ill. 2d 520, 328 N.E.2d 297 (1975), *Emberton*, 71 Ill. 2d 111, 373 N.E.2d 1348, *Miller v. De Witt*, 37 Ill. 2d 273, 226 N.E.2d 630 (1967), and *Lulich v. Sherwin-Williams Co.*, 992 F.2d 719 (7th Cir. 1993). In *Lulich*, the seventh circuit stated, "[s]ignificantly, Illinois courts have found that a company's retained authority to stop or control work to ensure worker safety alone is sufficient to constitute 'having charge.' " *Lulich*, 992 F.2d at 721, quoting *Kjellesvik v. Commonwealth Edison Co.*, 73 Ill. App. 3d 773, 777, 392 N.E.2d 116 (1979); *Larson*, 33 Ill. 2d 316, 211 N.E.2d 247. Pursuant to *Kjellesvik*, a defendant has charge of the work where a contract gives it authority to stop work for safety reasons. *Kjellesvik*, 73 Ill. App. 3d at 777. The *Kjellesvik* court also indicated that although its decision in that case was based on the contractual provisions granting authority to stop the work, "actual exercise of supervision and control over the work and the person doing it *** may be factors bearing on" whether a defendant is in charge of the work. *Kjellesvik*, 73 Ill. App. 3d at 777.[1]

In *Voss*, the court found that a contract gave defendant "extremely broad authority" over the work, including authority to conduct inspections of the contractor's work; the ability to discharge or remove workmen if defendant considered their work improper; defendant could suspend work if necessary because of "conditions unfavorable for the satisfactory prosecution of the work"; and authority to suspend work if the contractor failed to carry out orders given or to perform any provision of the contract. *Voss*, 60 Ill. 2d at 527. Although defendant correctly distinguishes *Voss* from the instant case on these facts, plaintiff points out that *Voss* quotes *Miller v. De Witt*, 37 Ill. 2d at 286 as stating, "We *** believe that *** the architects' right to stop the work if it were being done in a dangerous manner

---

[1]The court in *Larson* assumed that a contract granted a defendant the right to control the work. *Larson*, 33 Ill. 2d at 324.

makes them persons 'having charge' within the meaning of the act." *Voss*, 60 Ill. 2d at 527.[2]

In *Emberton*, the defendant architect was granted "authority" under the contract "to require the [c]ontractor to stop the [w]ork whenever in his reasonable opinion it may be necessary for the proper performance of the Contract." *Emberton*, 71 Ill. 2d at 123. *Emberton* also quoted *Miller* for the proposition that having the right to stop the work means that a defendant had charge of the work under the Act. *Emberton*, 71 Ill. 2d at 124.

Defendant fails to address plaintiff's contention, supported in *Voss, Emberton*, and *Lulich*, that defendant's having the right to stop the work means that it had charge of the work under the Act. Defendant merely argues that this right is only 1 of 10 and should be viewed under the totality of the circumstances instead of in a vacuum, citing *Burger v. Prairie Development, Ltd.*, 218 Ill. App. 3d 814, 826, 578 N.E.2d 1113 (1991). However, in *Burger*, this court specifically found that the defendant, who was the owner of property on which the plaintiff was injured in using a ladder, could not be held liable under the Act because its role in the construction was to ensure that work it was being billed for was actually completed; and although it retained the right to stop the construction for substantial breaches related to cost and scheduling matters, there was no "factual link between [that] inchoate right and the right to control the construction or suspend work for safety reasons." *Burger*, 218 Ill. App. 3d at 823-25.

The circuit judges in the case *sub judice* relied heavily on *Puttman*, 118 Ill. 2d 107, 514 N.E.2d 188, in finding that defendant could not be held liable under the Act because its only involvement in the construction was that of leasing a crane and operator to plaintiff's employer, Decking & Siding. Indeed, if that were the only material fact in this case, reliance on *Puttman* would be appropriate. In *Puttman*, the supreme court affirmed summary judgment in favor of a defendant who furnished equipment and operators pursuant to an hourly rental agreement. *Puttman*, 118 Ill. 2d at 113. In that case, however, there was "simply no evidence to contradict" the job superintendent's and the defendant's direct statements that the defendant could not stop the work; moreover, there was nothing which would enable a jury to conclude that the defendant did, in fact, have the authority to stop the work. *Puttman*, 118 Ill. 2d at 114.

[2]*Miller* was superseded by statute as stated in *Wirth v. City of Highland Park*, 102 Ill. App. 3d 1074, 430 N.E.2d 236 (1981), and criticized, disapproved, and not followed by subsequent cases.

Here, however, a genuine issue of material fact exists which distinguishes this case from *Puttman*, in that plaintiff presented evidence which directly contradicts defendant's assertion that it did not have the right to stop work for safety reasons. As stated earlier, Hughes, president of defendant, and Castle, the crane operator, admitted that the crane operator had the authority to stop the work for safety reasons. This authority to stop work for safety reasons, combined with the other elements indicated by Judge Brownfield to be present, were enough to deny summary judgment.

We find that, in this case, plaintiff has provided sufficient evidence of the existence of a genuine issue of material fact involving the right to stop work for safety reasons. As stated earlier, Judge Brownfield found that plaintiff demonstrated that defendant satisfied at least 4 of the 10 factors required under *Chance*. 112 Ill. App. 3d at 11. He found that defendant owned the equipment (element 8); defendant had knowledge of construction customs and practices regarding the operation of the crane (element 9)[3] ; and that defendant was in a position to assure worker safety and correct unsafe habits and equipment deficiencies as to the crane only (elements 5 and 10). For the reasons stated above, these four elements, especially the ability to stop work for safety reasons, are sufficient to raise a fact controversy as to whether defendant had charge of the work. See *Zukauskas*, 179 Ill. App. 3d 657, 534 N.E.2d 680 (there is a genuine issue of material fact as to whether a defendant had charge of the work where it owns the equipment, is familiar with construction conditions and practices, and where defendant is in a position to assure safety).

■ The trial court also granted summary judgment in favor of defendant on the negligence count. However, because there is a question of fact as to whether defendant had charge of the work under the Act, we hold that the negligence count should not have been dismissed and that summary judgment was therefore improper; for whether defendant had charge of the work determines whether or not there was a duty it owed to plaintiff. *Barnes v. Washington*, 56 Ill. 2d 22, 27, 305 N.E.2d 535 (1973) (the granting of a motion for summary judgment is proper if, under the pleadings and affidavits, it appears that the defendant owed no duty to the plaintiff); see *Puttman*, 118 Ill. 2d at 116 ("Necessary to any recovery based on negligence is the existence of a duty to conform to a certain standard of conduct for the protection of the plaintiff").

---

[3]This element has been deemed "almost useless" for the obvious reason that anyone working on a construction project would be familiar with general construction practices. *Burger*, 218 Ill. App. 3d at 826.

For all of the foregoing reasons, the judgment of the circuit court is reversed and the cause remanded for further proceedings in accordance with this order.

Reversed and remanded.

HARTMAN, P.J., and BURKE, J., concur.